UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

EIDY ALVARADO, INDIVIDUALLY
AND ON BEHALF OF K.A., A
MINOR

CIVIL ACTION

VERSUS

NO. 24-2862

WANABANA LLC, ET AL.

SECTION "R"

## ORDER AND REASONS

Before the Court is defendants Grupo Navis LLC's[1] ("Grupo Navis") and Caribbean Produce Exchange LLC's[2] ("CPE") motion to dismiss based on lack of personal jurisdiction. Plaintiffs, Eidy Alvarado, individually and on behalf of K.A., a minor, oppose the motions.[3] Plaintiffs also move for jurisdictional discovery.[4] Grupo Navis and CPE oppose the motion for jurisdictional discovery.[5] For the following reasons, the Court grants plaintiffs' motion for jurisdictional discovery, subject to a determination of the permissible scope of the discovery by Magistrate Judge Dossier. The Court denies defendants' motions to dismiss without prejudice to its refiling such a motion once jurisdictional discovery is complete.

---

[1]    R. Doc. 17.
[2]    R. Doc. 15.
[3]    R. Doc. 30.
[4]    R. Doc. 24.
[5]    R. Doc. 30.

1

## I. BACKGROUND

This case arises out of alleged harm stemming from lead-tainted fruit puree pouches.[6] Plaintiffs filed this suit against a number of business entities that they allege worked to import, distribute, market, advertise, promote, package, label, and provide for the sale of the fruit puree pouches.[7] Two of those businesses are Grupo Navis and CPE. Grupo Navis and CPE separately moved to dismiss the claims against them for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), because they do not have minimum contacts with Louisiana.[8] Plaintiffs oppose the motion.[9] Plaintiffs also moved for leave to conduct jurisdictional discovery related to Grupo Navis and CPE.[10]

The Court considers the motions below.

## II. LEGAL STANDARD

Personal jurisdiction "is an essential element of the jurisdiction of a district court, without which it is powerless to proceed to an adjudication." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) (internal citation

---

| | |
|---|---|
| 6 | R. Doc. 1. |
| 7 | *Id.* at 2. |
| 8 | R. Docs. 15 & 17. |
| 9 | R. Doc. 13. |
| 10 | R. Doc. 24. |

omitted). When a nonresident defendant moves the court to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the plaintiff bears the burden to show that personal jurisdiction exists. *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). When the court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, as in the present case, the nonmoving party need only make a *prima facie* showing. *Godhra v. United States Tobacco Co., Inc.*, 188 F.3d 619, 625 (5th Cir. 1999). The allegations of the complaint, except as controverted by opposing affidavits, must be taken as true, and all conflicts in the facts must be resolved in favor of plaintiffs. *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985).

A court has personal jurisdiction over a nonresident defendant if (1) the forum state's long-arm statute confers personal jurisdiction over that defendant, and (2) the forum state's exercise of jurisdiction complies with the Due Process Clause of the Fourteenth Amendment. *Latshaw v. Johnson*, 167 F.3d 208, 211 (5th Cir. 1999). Because Louisiana's long-arm statute, La. Rev. Stat. § 13:3201, *et seq.*, extends jurisdiction to the full limits of due process, the Court's focus is solely on whether the exercise of its jurisdiction in this case satisfies federal due process requirements. *Dickson Marine Inc.*

*v. Panalpina, Inc.*, 179 F.3d 331, 336 (5th Cir. 1999) (citing La. Rev. Stat. § 13:3201(B)).

The exercise of personal jurisdiction over a nonresident defendant satisfies due process when (1) the defendant has purposefully availed itself of the benefits and protections of the forum state by establishing "minimum contacts" with that state, and (2) exercising personal jurisdiction over the defendant does not offend "traditional notions of fair play and substantial justice." *Latshaw*, 167 F.3d at 211 (citing *Int'l Shoe Co. v. Wa.*, 326 U.S. 310, 316 (1945)).

There are two ways to establish minimum contacts: specific jurisdiction and general jurisdiction. *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994). General jurisdiction will attach, even if the act or transaction sued upon is unrelated to the defendant's contacts with the forum state, if the defendant has engaged in "continuous and systematic" activities in the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984); *see also Wilson*, 20 F.3d at 647 (same). Contacts between a defendant and the forum state must be "extensive" to satisfy the "continuous and systematic" test. *Submersible Sys., Inc. v. Perforadora Cent., S.A. de C.V.*, 249 F.3d 413, 419 (5th Cir. 2001); *see Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S.Ct. 2846, 2853–54 (2011) ("For an

4

individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation it is an equivalent place, one in which the corporation is fairly regarded as at home.").

Specific jurisdiction exists when a nonresident defendant "has purposefully directed its activities at the forum state, and the litigation results from alleged injuries that arise out of or relate to those activities." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 867 (5th Cir. 2001); *Helicopteros*, 466 U.S. at 414 n.8. Minimum contacts may be established by actions, or even just a single act, by the nonresident defendant that "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

"When the cause of action relates to the defendant's contact with the forum, the 'minimum contacts' requirement is satisfied, and 'specific' jurisdiction is proper, so long as that contact resulted from the defendant's purposeful conduct and not the unilateral activity of the plaintiff." *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 374 (5th Cir. 1987); *see also Hanson v. Denckla*, 357 U.S. 235, 253 (1958) ("The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State."). This restriction on the

minimum contacts inquiry ensures that the defendant "purposefully availed" itself of the benefits of the forum state such that it could "reasonably anticipate being haled into court there." *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 214 (5th Cir. 2000) (quoting *Burger King*, 471 U.S. at 474); *see also Bearry*, 818 F.2d at 375.

### III. DISCUSSION

Plaintiffs do not assert that defendants' activities give rise to general personal jurisdiction in Louisiana.[11] Instead, plaintiffs argue that defendants are subject to specific jurisdiction because the companies have purposefully directed their activities at Louisiana and the litigation results from alleged injuries that arise out of or relate to those activities. *See Revell*, 317 F.3d at 472 ("For specific jurisdiction we look only to the contact out of which the cause of action arises.").

Plaintiffs first argue that Louisiana maintains specific jurisdiction over Grupo Navis and CPE through a stream of commerce theory. In the Fifth Circuit, plaintiffs asserting the stream of commerce theory need only make a *prima facie* showing that defendants delivered the product that injured them into the stream of commerce with the expectation that it would be purchased

---

[11] R. Doc. 30 at 5 n.1.

by or used by consumers in the forum state. *In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 779 (5th Cir. 2018) (quoting *Ainsworth v. Moffett Eng'g, Ltd.*, 716 F.3d 174, 177 (5th Cir. 2013)). A "nonmanufacturing parent will sometimes lie within the stream" despite the fact that it does not manufacture or distribute the product. *Id.* In making a personal jurisdiction determination, the Court will look to the relationship between the companies, the forum, and the litigation. *Id.* The "[m]inimum-contacts analysis is more realistic than mechanical, turning on matters of substance rather than form." *Id.* (internal quotations omitted). Thus, labels and titles matter less to the Court's analysis than the business's contribution to the product's placement in the stream of commerce. *Id.* A passive parent-subsidiary relationship is insufficient to support jurisdiction. *Id.* at 780.

Plaintiffs argue that Grupo Navis and CPE placed a product into the stream of commerce because their "agent or co-venturers knowingly distributed the Products to retailers nationwide," and because the web of overlapping officers, recordkeeping, and office space between Grupo Navis, CPE, and various other companies indicates that Grupo Navis and CPE must

7

have been aware of the products' nationwide distribution, including distribution in Louisiana.[12]

In their complaint, plaintiffs alleged the following corporate structure. Austrofood S.A.S. manufactured the fruit purees in Ecuador.[13] The fruit pouches were exported to the United States by Wanabana Exchange LLC, which was the exclusive exporter.[14] CPE facilitated the imports into the United States,[15] and Wanabana USA LLC was the exclusive trader of the produce in the United States.[16] Wanabana USA LLC was owned by two entities: Grupo Navis and Wanabana LLC.[17] Grupo Navis also owned CPE.[18]

Plaintiffs also submitted a number of public statements and statements from other proceedings which provide that Grupo Navis and CPE were, at a high level, involved in the importing, distribution, and selling of these products into the U.S. market.[19] But while these statements may make a

---

[12]   R. Doc. 30 at 16.
[13]   R. Doc. 1 at 4.
[14]   *Id.* at 5
[15]   *Id.* at 8.
[16]   *Id.* at 5.
[17]   *Id.*
[18]   *Id.* at 8.
[19]   R. Doc. 30-5 at 4 (the chairman of Grupo Navis, the holding company of CPE, stating that they have a joint venture with Wanabana to "commercialize a line of 100 percent tropical fruit products in a pouch in the U.S."); R. Doc. 30-6 at 4 (a statement from the chairman of Grupo Navis stating that they created Grupo Navis as a holding company to enter into joint partnerships); R. Doc. 30-7 at 4 (noting

*prima facie* showing that defendants knew of the distribution networks or imports, they do not demonstrate with adequate specificity that defendants delivered pouches into the stream of commerce *with the expectation that it would be purchased by or used by consumers in Louisiana.* Defendants must reasonably anticipate being haled into court in Louisiana. While a defendant need not necessarily have specific knowledge of sales in a jurisdiction, there must be a basis for the reasonable expectation that such sales would be made. *See Ainsworth v. Moffett Eng'g, Ltd.*, 716 F.3d 174, 179 (5th Cir. 2013). And the basis must be stronger than knowing that the distributor's nation-wide network "*might* lead to those products being sold in any of the fifty states." *Zoch v. Magna Seating (Germany) GmbH*, 810 F. App'x 285, 292 (5th Cir. 2020) (emphasis in original) (quoting *J. McIntyre Mach., Ltd. v. Nicastro,* 564 U.S. 873, 891 (2011) (Breyer, J., concurring)); *see, e.g.*, *Allstate Ins. Co. v. Interline Brands, Inc.*, 997 F. Supp. 2d 501, 508

---

that Wanabana's marketing and distribution of fruit pouches is one of the most successful initiatives that Grupo Navis participated in); R. Doc. 30-8 at 2, 30 (bankruptcy testimony that the chairman of Grupo Navis is an officer of Wanabana, that Wanabana's records are maintained by Grupo Navis, that Grupo Navis owned some of the pouch distributors, and that it was aware of the kind of retailers to which the distributor was selling); R. Doc. 30-13 at 8 (declaration in another proceeding by a director of Austrofood declaring that Grupo Navis is responsible for the day to day administration of Wanabana USA); R. Doc. 30-14 at 2–3 (letter from the FDA stating that CPE imported Wanabana pouches from the foreign supplier).

9

(N.D. Tex. 2014) (noting that, in *Ainsworth*, the Fifth Circuit analyzed a number of facts to determine that the manufacturer-defendant could have reasonably anticipated being haled into Mississippi court, including the quantity of the product sold to the forum, the percent of the total sales to the form, the relatively large number of potential consumers given the forum's market, and the length of the distributor's relationship with the forum). The facts that plaintiffs submitted are too minimal and general to support personal jurisdiction under the stream of commerce theory.

Plaintiffs also assert that many of the businesses involved were "alter egos" or agents of Grupo Navis and CPE, in order to attribute their actions to Grupo Navis and CPE. This Circuit requires "proof of control by the parent over the internal business operations and affairs of the subsidiary in order to fuse the two for jurisdictional purposes." *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1160 (5th Cir. 1983). The alter ego analysis is heavily fact-specific and involves consideration of twelve factors. *See United States v. Jon-T Chemicals, Inc.*, 768 F.2d 686, 694, 691–692 (5th Cir. 1985) (outlining the "heavily fact-specific" "laundry list of factors"). These factors include whether (1) the parent and the subsidiary have common stock ownership; (2) the parent and the subsidiary have common directors or officers; (3) the parent and the subsidiary have common business departments; (4) the

10

parent and the subsidiary file consolidated financial statements and tax returns; (5) the parent finances the subsidiary; (6) the parent caused the incorporation of the subsidiary; (7) the subsidiary operates with grossly inadequate capital; (8) the parent pays the salaries and other expenses of the subsidiary; (9) the subsidiary receives no business except that given to it by the parent; (10) the parent uses the subsidiary's property as its own; (11) the daily operations of the two corporations are not kept separate; and (12) the subsidiary does not observe the basic corporate formalities, such as keeping separate books and records and holding shareholder and board meetings. *Id.* Though plaintiffs submitted statements alluding to the crossover between these business entities,[20] plaintiffs failed to submit the evidence necessary to conduct this analysis, such as specific information about the companies' ownership, organizational structure, management, operational integration, financial statements, capitalization, and use of assets. Therefore, the Court cannot determine if Grupo Navis and CPE are alter egos of the other companies.

Additionally, there is insufficient evidence to establish agency. "Under Louisiana law, an agency relationship is created by either express appointment of a mandatory under Civil Code Article 2985 or by implied

---

[20]    *See supra* note 19; *see also* R. Doc. 30 at 18–19.

appointment arising from apparent authority." *Richard A. Cheramie Enters., Inc. v. Mt. Airy Ref. Co.*, 708 F.2d 156, 158 (5th Cir. 1983). An agency relationship cannot be presumed; it must be clearly established. *Id.* Plaintiffs made no allegations of express agency and submitted no evidence establishing that Grupo Navis or CPE had express authority over each other or any other defendants. To establish implied agency, plaintiffs must show that: (1) a principal made some manifestation to a third party, and (2) the third party reasonably relied on the agent's purported authority as a direct consequence of the principal's representations. *Id.* There is no support for implied agency in the complaint or the record, because plaintiffs allege no facts and point to no evidence that Grupo Navis or CPE made a manifestation to any relevant third party or that any third party reasonably relied on the agent's authority. Therefore, plaintiffs did not establish an agency relationship.

Plaintiffs have not demonstrated that the other business entities' actions should be attributed to Grupo Navis or CPE, or that either company delivered the pouches into the stream of commerce with the expectation that they would be used by consumers in Louisiana. In order to produce the relevant evidence on the issue of personal jurisdiction, plaintiffs moved for discovery for (1) contracts or agreements with other defendants or entities

involving the manufacture, marketing, distribution, development, sale, or regulatory affairs related to the defective products; (2) the organizational structure and membership of CPE and Grupo Navis in relation to other defendants and entities owned that were involved with the defective products; (3) the system of distribution of defective products; (4) CPE's and Grupo Navis's knowledge of the distribution of the defective products; (5) CPE's and Grupo Navis's respective control or right to control the manufacture, marketing, distribution, development, sale, or regulatory affairs related to the defective products; and (6) CPE's and Grupo Navis's respective control or right to control other defendants' overall business and budgetary strategy or to direct their activities, or mandate their course of action related to the defective products.

The Court has broad discretion over all discovery matters. *Wyatt v. Kaplan*, 686 F.2d 276, 283 (5th Cir. 1982). "[T]he district court must give the plaintiff an opportunity for discovery and for a hearing that is appropriate to the nature of the motion to dismiss. Thus, some courts have refused to grant such a motion before a plaintiff has had a chance to discover the facts necessary to establish jurisdiction." *Williamson v. Tucker*, 645 F.2d 404, 414 (5th Cir. 1981) (citing *Surpitski v. Hughes-Keenan Corp.*, 362 F.2d 254 (1st Cir. 1966)); *Collins v. N.Y. Cent. Sys.*, 327 F.2d 880 (D.C. Cir. 1963).

13

Jurisdictional discovery may be warranted when "the issue of subject matter jurisdiction turns on a disputed fact." *In re MPF Holdings US LLC*, 701 F.3d 449, 457 (5th Cir. 2012) (citing *In re Eckstein Marine Serv. L.L.C.*, 672 F.3d 310, 319–20 (5th Cir. 2012)). "If a plaintiff presents factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between [the party] and the forum state,' . . . the plaintiff's right to conduct jurisdictional discovery should be sustained." *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003) (quoting *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992)). "When the lack of personal jurisdiction is clear, discovery would serve no purpose and should not be permitted." *Wyatt*, 686 F.2d at 284.

    Here, the lack of personal jurisdiction is not clear, and plaintiffs have alleged that there are disputed facts related to Grupo Navis's and CPE's direction and control over the sale and distribution of the product in question. The public comments, though insufficient by themselves to demonstrate specific personal jurisdiction, do establish with reasonable particularity the possible existence of the requisite contacts between Grupo Navis and CPE and Louisiana. While Grupo Navis and CPE argue that discovery is not necessary because they submitted affidavits swearing that they did not control or dictate the business operations of the other

14

defendants in this case,[21] that is not the requisite standard. Defendants may still be found to be alter egos of one another, or they may still be found to have contributed to placing the defective product into the stream of commerce with the expectation that it would be purchased by or used by consumers in Louisiana. Because plaintiffs have not had an opportunity to discover evidence that would support their personal jurisdiction assertion, and because they explained the nature of the discovery sought, the Court grants plaintiffs' motion for jurisdictional discovery, subject to a determination of the limits of such discovery. The Court denies defendants' motions to dismiss without prejudice.

## IV.  CONCLUSION

For the foregoing reasons, the Court GRANTS plaintiffs' motion to conduct jurisdictional discovery subject to a determination by Magistrate Judge Eva Dossier of limits on the scope of such discovery. Plaintiffs must file a motion with Magistrate Judge Dossier justifying the discovery by June 3, 2025. Defendants shall respond by June 10, 2025. Jurisdictional discovery must be completed by August 11, 2025. Defendants' motions to

---

[21]   R. Doc. 32-1 at 2; R. Doc. 31-1 at 2.

dismiss are DENIED WITHOUT PREJUDICE to their refiling such motions once jurisdictional discovery is complete.

New Orleans, Louisiana, this __27th__ day of May, 2025.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE